**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**CIVIL ACTION NO. 3:12-CV-751-H**

JOYCE A. KEITH                                                                                          PLAINTIFF

V.

CARYLON W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY                                             DEFENDANT

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

The plaintiff, Joyce A. Keith, filed this action pursuant to 42 U.S.C. §405(g), seeking

judicial review of an administrative decision of the Commissioner of Social Security, who denied

her application for disability insurance and supplemental security income benefits (docket no. 1).

At issue is whether the administrative law judge erred (1) by determining that Ms. Keith's mental

health problems did not meet or equal the requirements of a listed impairment and (2) by

determining that she retained the residual functional capacity to perform sedentary work with

significant restrictions, in spite of her physical impairments.  After reviewing the parties'

submissions (docket nos. 12 and 13) and the administrative record (docket no. 10), the magistrate

judge recommends that the district court affirm the decision of the Commissioner of Social

Security.

## I. PROCEDURAL HISTORY

Ms. Keith applied for disability insurance and supplemental security income benefits in

February 2010 and alleged she became disabled as of June 1, 2003.[1]  After her application was

_____

[1] Administrative Record ("Admin. R.") at 135-140.

denied initially and on reconsideration, Ms. Keith filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ conducted the hearing in October 2010[2] and on June 30, 2011, issued a decision unfavorable to Ms. Keith in which he determined that none of her impairments met or equaled a Listed Impairment and that she retained the residual functional capacity to perform sedentary work with a sit-stand option and several other exertional and non-exertional restrictions.[3]

Ms. Keith timely appealed the ALJ's decision to the Appeals Council, which affirmed the decision of the ALJ.[4] She then timely appealed to this court, generally asserting that the ALJ erred when he determined that Ms. Keith's mental health conditions (specifically her depression and anxiety) and her physical impairments did not prevent her from working, and arguing more specifically that the ALJ erred by giving greater weight to the opinions of record-reviewing consultants than her treating professionals and by rejecting the probative value of her Global Assessment of Functioning (GAF) Scores.

## II. STANDARDS OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the court may not try the case *de novo,* nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Comm'r of Soc. Sec.,* 279 F.3d 348, 353 (6th Cir.2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *Landsaw v. Sec'y of Health and Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

---

[2] Admin. R. at 31-53.
[3] Admin. R. at 10-24.
[4] Admin. R. at 1-4.

**The Five-Step Evaluation Process**

In reaching a determination regarding a claimant's disability, an ALJ is required to perform a five-step sequential evaluation process. If the ALJ is able to find that a claimant either is or is not disabled at a particular step, he must not go on to the next step. The five steps are as follows:[5]

(1) Step one: the ALJ evaluates the claimant's work activity, if any. If the claimant is engaged in substantial gainful activity, he is not disabled.

(2) Step two: the ALJ considers the medical severity of the claimant's impairments. If there exists no severe medically determinable physical or mental impairment (or combination of impairments) that meets the duration requirement, the claimant is not disabled.

(3) Step three: the ALJ also considers whether the claimant has an impairment (or combination of impairments) that meets or equals one listed in 20 C.F.R. Pt. 404, Subpt. P, App 1, and meets the duration requirement. If so, the ALJ must find that the claimant is disabled.

Before the ALJ goes from step three to step four, he must assess the claimant's residual functional capacity, which the ALJ then must use at both step four and step five when evaluating the claimant's alleged disability.

(4) Step four: the ALJ must consider his assessment of the claimant's residual functional capacity and his past relevant work. If the claimant can still do his past relevant work, the ALJ must find that he is not disabled.

(5) Step five: the ALJ must consider the claimant's residual functional capacity and his age, education, and work experience to see if the claimant can make an adjustment to other work. A claimant who can make an adjustment to other work is not disabled, but one who cannot is disabled.

Ms. Keith asserts that the ALJ erred primarily at step three by finding that she did not meet the criteria for Listings 12.04 and 12.06, and at step five by determining that she had the residual functional capacity to perform certain sedentary work.[6]

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

According to Ms.Keith, the ALJ improperly determined that her various psychological and physical impairments have not rendered her legally disabled. Ms. Keith argues that her psychological impairments meet or equal in severity the Listed Impairments of affective disorders and anxiety and that

---

[5] 20 C.F.R. § 404.1520(a)(4).
[6] Def's Fact and Law Summ. (docket no. 12).

the ALJ erred when he determined that they did not, because he improperly relied on the analysis of the reviewing consultants, as opposed to the opinions and records of her treating psychiatrist and a licensed clinical social worker who worked with him. Ms. Keith also asserts that the ALJ erred when he determined that her physical impairments did not preclude her ability to work.

## A. Evidence Regarding the Severity of Ms. Keith's Various Physical Impairments

Ms. Keith asserts that several of her physical ailments (back pain, a cyst on her left knee, propensity for seizures, obesity, and diabetes) prevent her from maintaining any gainful employment. Although Ms. Keith reported and testified that these ailments were debilitating in isolation and in combination,[7] the ALJ correctly noted that there existed insufficient medical evidence to support her claim[8] and, in addition, her own testimony undercut some of her claims (*e.g.*, her ability to tolerate a sit/stand option at work).[9] In addition, the ALJ also correctly noted that much of the medical evidence supports his conclusion that Ms. Keith would require a job with several exertional, environmental, and postural limitations, plus a sit/stand option, but with those limitations, none of her impairments, either individually or in isolation, prevent her from working.[10]

## B. Evidence Regarding whether Ms. Keith's Depression and Anxiety Meet or Equal Listings 12.04 and 12.06.

Ms. Keith also claims that the ALJ erred in his assessment of her mental impairments, specifically whether her depression and anxiety meet or equal two so-called Listed Impairments. A claimant is eligible for benefits without further inquiry, if he can prove that his impairment, or a combination of impairments, meets or equals any impairment found in the Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. 404.1520(d) and

---

[7] *See generally* Admin. R. at 38-63; *see also* Admin. R. at 153, 183-84, 202.
[8] *See* Admin. R. at 24-26 and exhibits cited therein.
[9] *Compare* Admin. R. at 43, *with* 57-58; *see also* Admin. R. at 47 (Ms. Keith testifies she has had no more than six seizures).
[10] Admin. R. at 64-68.

416.920(d). In order to meet or equal the requirements of a particular Listed Impairment, a claimant must present specific medical evidence that demonstrates he suffers from *all* of the enumerated criteria of that Listed Impairment. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of the criteria, no matter how severe, does not qualify.").

According to Ms.Keith, the ALJ improperly determined that her mental impairments do not meet or equal the severity of Listing 12.04 (Affective Disorders -- *i.e.,* depressive syndrome, manic syndrome, or bipolar syndrome) and 12.06 (Anxiety Disorders). Both Listing 12.04 and 12.06 have three lettered paragraphs and both state that a claimant must satisfy the requirements of ***both*** paragraphs A (which lists specific medical findings) ***and*** B (which lists specific impairment-related functional limitations), or ***only*** the requirements of paragraph C (which describes conditions that would permit the ALJ to presume that the claimant cannot work without the need for determining the existence of specific symptoms).

Paragraphs B in Listing 12.04 and 12.06 are identical and state that the claimant's mental disorder must result in at least two of the following to meet or equal the listed condition:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration [which means three episodes in one year, or an average of one episode every four month, with each episode lasting for at least two weeks].

Paragraph C of Listing 12.04 (affective disorders), however, requires:

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Paragraph C of Listing 12.06 (anxiety-related disorders), requires only a "complete inability to function independently outside the area of one's home."

The ALJ determined that Ms. Keith has only mild restrictions in her activities of daily living,[11] and that any such limitations are primarily due to her pain, and not her psychological impairments.[12] This assessment is adequately supported by evidence in the record, including Ms. Keith's own statements.[13] The ALJ further determined that Ms. Keith has only moderate difficulties with social functioning and with maintaining concentration, persistence or pace.[14] These conclusions, too, are supported by substantial evidence in the record.[15] And, accordingly, substantial evidence supports the ALJ's analysis that Ms. Keith's psychological symptoms do not satisfy the criteria for either Listing's paragraph B.

Similarly, the ALJ's analysis of whether Ms. Keith presented evidence that her conditions meet or equal either Listing's paragraph C are supported by the evidence, with one exception. The ALJ concluded that "the claimant has experienced no episodes of decompensation, which have been of extended duration."[16] This is not wholly supported by the record, which is significant, because the ALJ determined that Ms. Keith's psychological disorders cause "more

---

[11] Admin. R. at 22.
[12] 27-28.
[13] Admin. R. at 51-58, 62, 178—79, 182-84, 199.
[14] Admin. R. at 22.
[15] Admin. R. at182-86, 204-206, 381-464.
[16] Admin. R. at 23.

than a minimal" disruption of her ability to perform basic work activities. So, if there exists evidence of repeated episodes of decompensation, each of extended duration, her condition arguably would meet or equal Listing 12.04(C)(1).

The phrase "repeated episodes of decompensation, each of extended duration" is defined by the governing regulations as three episodes within one year, or an average of once every four months, each lasting two weeks or longer. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00(C)(4) Ms. Keith has been treated monthly by a licensed psychiatrist, Dr. Zafrin B. Syed since 2006. Dr. Syed's treatment notes were included in the administrative record and subject to varying interpretation.[17] Those notes are written on identical pre-preprinted forms that permitted Dr. Syed to circle one of the following assessments each month: Clinically Stable, Improved, Unchanged, Decompensated.[18] He never assessed Ms. Keith as Clinically Stable.[19] His assessments of Ms. Keith as he varied her medicines were always that she was either Decompensated, Unchanged, or Improved as he varied Ms. Keith's medicines.[20] Although Dr. Syed never circled Decompensated more than two times in any given year, there were several times in which he assessed Ms. Keith as Decompensated one month and as Unchanged for several months thereafter, including one period of seven months in the year prior to her hearing before the ALJ,[21] and during the four months immediately prior to her hearing.[22] The court could consider this evidence to be evidence that the ALJ erred when he flatly declared that Ms. Keith had not experienced repeated episodes of decompensation, each of an extended duration.

---

[17] *See* Admin. R. at 381-464, 535-40.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] Admin. R. at381-88.
[22] Admin. R. at 535-40.

Yet, as the ALJ noted, Dr. Syed's other notes "do not reflect clinical findings one would expect given the allegations of a total disability."[23] The ALJ correctly observed that Dr. Syed's notes elsewhere on the pre-printed forms reflect that Ms. Keith displayed variable affect during the several years he treated her, and that the "overwhelming majority"[24] of Dr. Syed's records, even during Ms. Keith's putative periods of decompensation, state that he observed her to be "alert, oriented, pleasant and cooperative," that her "appearance, insight and judgment were, at all times, fair to good, as was her memory and attention[,]" and that she "exhibited normal thought content, free of suicidal ideations." [25]

These findings conflict with the assessment[26] by Ms. Keith's licensed clinical social worker, Theresa Fautz, whose treatment of Ms. Keith putatively was overseen by Dr. Syed, who placed his signature on several of her reports.[27] Ms. Fautz served as Ms. Keith's therapist from JDecember 2009 through September 2010, and during the last eight months of this therapy, Dr. Syed assessed Ms. Keith as Decompensated and Unchanged. [28] Ms. Fautz stated in her assessment of Ms. Keith's work related abilities that Ms. Keith demonstrated no ability to adequately maintain attention or concentration or to functional independently, and that she would be generally unable to behave in a way, or perform tasks in a manner, that would permit her to work.[29]

In addition, Ms. Fautz assigned Ms. Keith a Global Assessment of Functioning score at the conclusion of each therapy session.[30] Global Assessment of Functioning scores reflect a therapist or doctor's opinion regarding a person's symptoms and level of social, occupational,

---

[23] Admin. R. at 26.
[24] Admin. R. at 26.
[25] Admin. R. at 26, 381-464, 535-40..
[26] Admin. R. at 533-34.
[27] *See generally* Admin. R. at 355-69.
[28] Admin. R. at 381-88.
[29] Admin. R. at 533-34.
[30] *See* Admin. R. at 355-69.

and educational functioning at the time of the assessment. *See Diagnostic and Statistical Manual of Mental Disorders,* 32-33 (4th ed. 2000, Text Revision)("DSM-IV-TR"). Scores between 41 and 50 reflect serious symptoms or "any serious impairment in social, occupational, or school functioning." DSM-IV-TR at 34. Ms. Fautz assigned Ms. Keith a score of 45 the day before Dr. Syed assessed Ms. Keith as Improved,[31] and assessed Ms. Keith with GAF scores of 48, 49, 45, and 40 between February and June 2010,[32] a period in which Dr. Syed assessed Ms. Keith as Decompensated and Unchanged, but nonetheless possessed of good judgment and insight, compliant with her medications, and alert and oriented, albeit anxious.[33]

Because Ms. Fautz, as a licensed clinical social worker, is not an "acceptable medical source" whose opinion is entitled to any deference, *see* Social Security Ruling 06-03p, the ALJ evaluated and considered Ms. Fautz's opinions regarding Ms. Keith's functional limitations and the severity of her impairments, but gave her opinions, including her determination of Ms. Keith's GAF scores, only little weight.[34]

The ALJ relied most heavily on the assessment of the record-reviewing consultant, Richard J. Hamersma, Ph.D., instead of the opinions of Ms. Keith's treating psychiatrist and social worker.[35] With the exception of Dr. Syed's "Decompensated" assessments, Mr. Hamersma's opinions are not materially different from Dr. Syed's observations as reflected in his treatment notes.[36] And, although Mr. Hamersma concluded that there existed no evidence that Ms. Keith's conditions met or equaled the criteria of Listings 12.04 and 12.06, and that she showed no more than a moderate limitation on her ability to perform several discrete job-related tasks, he did agree with Ms. Fautz that Ms. Keith should be limited to simple, repetitive tasks,

---

[31] *Compare* Admin. R. at 362, *with* Admin. R. at 389.
[32] Admin. R. at 356-62.
[33] Admin. R. at 383-87.
[34] Admin. R. at 28.
[35] Admin. R. at 27-28.
[36] *Compare* Admin. R. at 337-53, *with* 381-464, 535-40.

and have only limited interactions with her coworkers, supervisors, and the public, which the ALJ incorporated in his determination of Ms. Keith's residual functional capacity.

### III.  CONCLUSIONS OF LAW

The district court must affirm the conclusions of the Commissioner of Social Security unless the administrative law judge failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. §405(g); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008)(defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  If a reasonable mind could accept the evidence relied upon by the administrative law judge as adequate to support the challenged conclusion, this court cannot reject it, even if there exists evidence that could support a decision the other way.  *See Cotton v. Sec'y Health & Human Servs.,* 2 F.3d 692, 695 (6th Cir. 1993).

**A.  The ALJ's Assessment of the Severity of Ms. Keith's Physical Impairments**

The magistrate judge concludes that the ALJ did not err when he concluded that Ms. Keith's physical impairments do not preclude her from performing sedentary work with an option to sit or stand every thirty minutes, as needed, and with other postural, exertional and environmental limitations.   Despite Ms. Keith's assertions that her conditions severely restrict her abilities and her daily activities, there exists ample medical evidence in the record to support the ALJ's conclusion and inadequate evidence to support Ms. Keith's claims.

**B.  The ALJ"s Assessment of the Severity of Ms. Keith's Psychological Impairments**

The evaluation of the ALJ's conclusions with respect to the severity of Ms. Keith's psychological impairments requires more detailed analysis.  Ms. Keith asserts that the ALJ erred when he determined that her impairments do not meet or equal in severity the criteria of Listings 12.04 and 12.06, because he improperly rejected the opinions of her treating psychiatrist and social worker, and relied instead on the opinion of a record-reviewing consultant who never examined or treated Ms. Keith.

The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the opinion of the claimant's treating source.  20 C.F.R. §§ 404.1527(d), 416.927(d).  When a treating source's opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques, *and not inconsistent with other substantial evidence in the record*, it should receive controlling weight. *See* Social Security Ruling 96-2p (emphasis added); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Cole v. Comm'r of Soc. Sec.,* 661 F.3d 931, 937 (6th Cir. 2011).  If an administrative law judge determines that a treating source's opinion is not entitled to controlling weight, he must nonetheless determine how much weight the opinion is entitled to, and must set forth in the

administrative decision good reasons for the weight given to that medical opinion. Social Security Ruling 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 545-546 (6th Cir. 2004).

Because the ALJ correctly noted that a social worker is not considered an "acceptable medical source" whose opinion is entitled to a presumption of controlling weight normally afforded treating sources, *see* Social Security Ruling 06-03p; because GAF scores are not determinative of whether one is legally disabled even if Ms. Fautz were an "acceptable medical source," *see Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007); and because Dr. Syed's treatment notes support Dr. Hamersma's conclusions generally, there is but one narrow issue requiring the court's analysis: whether Dr. Syed's assessment of Ms. Keith as Decompensated and Unchanged for several lengthy periods is entitled to more weight than Dr. Hamersma's conclusion that she has not experienced any "repeated episodes of decompensation, each of extended duration." The magistrate judge concludes it is not.

As noted above, a treating doctor's opinion is entitled to controlling weight only when it is not inconsistent with other substantial evidence in the record. Even if one accepts Dr. Syed's decision to circle the word Decompensated on a pre-printed form one month and then Unchanged for several months thereafter as a clinical assessment that she remained in an extended period of decompensation sufficient to satisfy the requirement articulated in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00(C)(4), that assessment is contradicted by Dr. Syed's notes elsewhere on the forms. As discussed in the findings of fact, *supra*, Dr. Syed's other observations on the forms in question are accurately reflected in Dr. Hamersma's evaluation, which included a determination that there exists no evidence that Ms. Keith satisfies the criteria of Listings 12.04 and 12.06, including the determination that she has not suffered from repeated

episodes of decompensation, each of extended duration.[37]  Accordingly, the magistrate concludes that the ALJ did not err when he concluded that Ms. Keith did not meet her burden of proving that her mental conditions met or equaled in severity any Listed Impairment.

## IV.  RECOMMENDATION

The magistrate judge concludes that Ms. Keith has not met her burden of establishing that the administrative law judge erred when he evaluated the evidence and determined that Ms. Keith's psychological impairments did not meet or equal a listed impairment and when he failed to conclude that her physical impairments rendered her totally disabled.  **The ALJ's findings as to both her physical and mental residual functional capacities are supported by substantial evidence and cannot be set aside under 42 U.S.C. § 405(g).**

Accordingly, the magistrate judge recommends that the district court enter an order affirming the decision of the Commissioner of Social Security.

DATE:

cc:  Counsel of Record

### NOTICE

Within fourteen (14) days after being served a copy of these proposed findings of fact, conclusions of law, and recommendation, any party who wishes to object must file and serve written objections, or further appeal is waived.  28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).

---

[37] Admin. R. at 349.